All right, the next case we're going to hear is Roudabush v. Milano, and Mr. Korsen, we'll hear from you. Oh, no, we're going to hear from somebody else, right? That's right, Your Honor. May it please the Court, John Korsen with the Wake Forest Appellate Clinic. I'd like to introduce the students who are here. I have an experience with this clinic going some years back. It was a habeas case, and the student won the case, and it appeared all over in the newspapers. The student had won the case. It seems to me they're going to start hiring the students instead of the lawyers. Well, that would be good, and maybe lightning will strike twice, too, so you never know. All right, we'll hear from her. Right, so under Local Rule 46, I'd like to introduce the student who will talk and answer your questions. That's Kelsey Mellon, a third-year law student. Also with us is Mickey Herman, a third-year student who's helped with the preparation for the oral argument. Thank you, Your Honors. Thank you. We'll welcome you, hear from you, Ms. Mellon. May it please the Court. Good morning, Your Honors. My name is Kelsey Mellon, and I am here today representing the appellant, Mr. James Rudabush. The issue in this case is whether a prisoner sufficiently stated a constitutional claim for relief under the plausible pleading standards. Per this Court's instruction, appellant has briefed Mr. Rudabush's equal protection claim. We have also briefed his civil conspiracy and due process claims as well. I would like to focus my argument on Mr. Rudabush's equal protection claim, although I'm prepared to argue if Your Honors have questions regarding issues two and three. The plausible pleading standard required by the Supreme Court... That was a good decision. Yes, Your Honor. The plausible pleading standard does not obviate the Supreme Court's consistent reminder that prison walls should not form barriers between inmates and the protections of the Constitution. Therefore, this Court should reverse the District Court's grant of defendants' motion to dismiss for three reasons. First, Mr. Rudabush's complaint is sufficient under the plausible pleading standard. Second, in light of Mr. Rudabush's pro se status, his complaint should be liberally construed so as to do justice per this Court's jurisprudence. And finally, a major policy consideration working towards the eradication of racial discrimination in prisons warrants reversal. Therefore, appellant respectfully requests that this Court reverse the District Court's dismissal. Why don't you give us just a very concise statement of the factual allegations that support your equal protection. As I understand, it's based on his transfer from one, from segregation to protective custody. Is that it? Yes, Your Honor. Part of Mr. Rudabush... You didn't add any other facts to that? Yes, Your Honor. On pages 12 through 14 of the record, as well as page 20 and 20... I want to make sure we're clear. He made five complaints. That's one of them. Is that the one of the five you're going to put your emphasis on? Your Honor, it is appellant's argument that the complaint should be taken as a whole, and we should look at the practice of the facility. I don't know which of the five claims are you focusing on. Yes, Your Honor. Mr. Rudabush's claim that's the strongest that would support a reversal would be his complaint, or his allegations, on pages 21 of the joint appendix, where he noted that African-American inmates were allowed to choose their cell at will, whereas Caucasian and Hispanic inmates were not allowed to choose their cell at will. Do you think number four, which is the one Judge Niemeyer alluded to, is the strongest? Yes, Your Honor. It is the strongest. But again... In the process of it, please focus on number five once you answer that question too, which is the one dealing with the extra recreational time. Yes, Your Honor. So, as Judge Niemeyer noted, there are allegations that Mr. Rudabush was moved because of preferences of another prisoner. But as Judge Wynn also noted, on pages 13 and 14 of the record, Mr. Rudabush noted that African-American inmates were allowed unlimited recreation time, whereas Caucasian and Hispanic inmates were only allowed recreation time between 2 a.m. and 4 a.m. And this was consistent throughout the record that Mr. Rudabush noted. Moreover, Mr. Rudabush noted that African-Americans were given extra food from outside of the prisons brought in specifically for them, whereas Caucasian and Hispanic inmates were only given prison-issued food. Additionally, African-American inmates were the only inmates allowed to use computer time. Maybe I'm missing something. I thought he was transferred from one status to another. Your Honor, he was... He was in segregation, right? Yes, Your Honor. And he was transferred to, from segregation, conditions that you're describing now, in segregation, to protective custody, where he was denied these privileges. Yes, Your Honor. Mr. Rudabush alleges that he was moved from general population to the... Not general population. Yeah, from the segregated conditions to protective custody conditions. And that those conditions and those two populations were different, right? The privileges were different. Yes, Your Honor. And your argument is that they're transferring him from one status to the other, discriminated against him, because he was white, mainly. Yes, Your Honor. Mr. Rudabush states that the reason, a big reason why he was moved from admin... The administrative segregation to protective custody was because of his complaints about these issues, about this discriminatory treatment. And rather than address the issues, the prison facility moved him to protective custody, rather than address the discriminatory issues that he was making complaints of regarding the food, the recreation time, et cetera. Therefore that's the argument, the equal protection that he... I understand, but it sounds to me like the move was made to protect him from the inmate population, which was mostly African American. Your Honor, that was never necessarily addressed by opposing counsel in their brief. No, I thought that's what you alleged. What's protective custody mean? Protective custody was essentially solitary. He was in a... I thought protective custody is to protect him from the prison population. Yes, because of the discriminatory treatment that wasn't being addressed. So, when they find that somebody, because he's white, is being treated bad by mostly African American prison population, and they move him to a place where he can be protected, you're saying that violates the equal protection clause? The focus of the equal protection clause is on the underlying treatment that prompted the move. The underlying treatment that the prison facility staff was giving different treatment, as I mentioned before. Well, they don't have to if they're changing him from segregated to protective. That's prior to. These complaints were prior to that move. The complaints regarding the recreation time, the food, the choice of cell, that was prior to the move that Mr. Rudabush alleged. Moreover, Mr. Rudabush also alleges that he was retaliated against for making these complaints by prison officials at the Alexandria Detention Center. And that's, again, what prompted the move, was the disparate treatment before the move to admin segregation. Moreover, Mr. Rudabush's... The complaint or the facts stated by Mr. Rudabush are entirely consistent with racial discrimination as determined in numerous other cases decided by the Supreme Court and this court, specifically in Johnson v. California. A Supreme Court case from 2008 talks about a similar situation involving racially discriminatory treatment in a prison setting. Moreover, opposing counsel and defendants never actually denied any of Mr. Rudabush's allegations. Mr. Rudabush's complaint was filed on October 24th, or excuse me, October 4th of 2013. And rather than answer that complaint, opposing counsel simply filed a 12v6 motion to dismiss. And that alone, coupled with Twombly's mandate that all facts pleaded must be accepted as true, warrants reversal of the motion to dismiss. Additionally, in the... In the... In opposing counsel's brief noted on page two, they did note that there were some facts in the... Or some facts in Mr. Rudabush's narrative. Let's focus on this claim that he made that white and Hispanic inmates were only given recreational time between the hours of 2 to 4, while black inmates were given a more desirable time. That, in and of itself, taken under the standard necessary to establish a primary official case to be protected, sets forth the discrimination in the suspect class dealing with race here Yes. Very clearly. And that he was being treated differently than similarly situated inmates of a different race. It seems to be pretty clear, at least the allegation is there. The question then is, what is the standard once you do that? And did the trial judge apply the strict scrutiny standard, or did he do something different? Your Honor, yes. The trial judge applied a different standard. What did he apply? Rational basis review, rather than a strict scrutiny standard. But he did that on a basis of a case that says that when you're dealing with a prison-type situation, you can use something, you look at the safety of the officials? Yes, Your Honor. He relied, I believe it was the Morrison v. Garrity case, which came from this circuit. I believe in the late 90s, it discussed that in a prison setting, the standard of review is lowered due to penological interests. What's wrong with that? Answer his question. Yeah. In Johnson v. California, the Supreme Court mentioned this. The case the Fourth Circuit relied on in the Morrison case was Turner v. Safely, which is a case involving a prisoner's First Amendment rights rather than race. And in Johnson v. California, the Supreme Court specifically stated that Turner does not relate to race at all. And Turner, the case never even spoke about race. Rather, strict scrutiny should always be applied in racial cases. So you're answering that Johnson actually controls this outcome, that strict scrutiny should be applied even in a prison setting under these circumstances? Yes, Your Honor. But even if it doesn't, we would still meet the rational basis requirement due to the fact that the facts allege— Why would you argue that since you've told me just then that Johnson requires strict scrutiny? Why would you go to the even if it doesn't? I just wanted to give the— To cover everything? Yes, Your Honor. How can we look at what the defendant's reasons are in a 12b-6 motion? How can we do that? If the defendant would have—12b-6 looks at the pleadings, if the— Looks at the complaint. The complaint. And there's not an answer. Where is this information coming from? What the prison did, why they did it, what standard? It just seems to me that question is premature. Yeah. At the 12b-6 stage. I agree, Your Honor. The question is premature at a 12b-6 stage. There was no—we looked at the 12—or the, excuse me, the motion filed by defendants mentioned these reasons, but there were no reasons at the pleading stage. Therefore, it's irrelevant whether there are any explanations or alternative explanations. That's right. You'd have to see what claims survive the 12b-6 stage. Then they'll answer. And then we'll see. Exactly, Your Honor. We'll examine their reasons if they have any. Exactly, Your Honor. And that's specifically true given Mr. Rudebusch's pro se status. The Supreme Court in Erickson v. Pardis, a 2007 case, reminded the court that even after Twombly, a document filed pro se is to be construed liberally. And a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. There's no doubt that Mr. Rudebusch's complaint wasn't necessarily artfully stated. But, in fact, there were facts alleged in the complaint that support moving on to the discovery stage to determine whether, again, whether there are alternative explanations for this, to take depositions of any of the prison... Well, let me... I have the complaint in front of me here. And what is it that you think shows an equal protection claim? I mean, the question is there's so many possibilities. There could be penological interests. There could be punishment. There could be privileges awarded. You don't know in the complaint what status he is in when he's complaining about these things. And he's moved for various ranks. He doesn't explain any of that. He basically says, de facto, blacks have benefits and I don't. But he doesn't say why. Your Honor, that's, again, as Judge Traxler noted, it's a little... I'm asking how does that state an equal protection? Yes, Your Honor. The facts alleged on pages, again, 12 through 14, specifically lay out just facts that Mr. Rudibus witnessed at the prison facility that could later be confirmed as a... Excuse me. There are numerous facts from which a conclusion could be drawn and tested during the discovery stage. Again, the fact that African Americans were given essentially unlimited recreation time, whereas Caucasians and Hispanic inmates were only given two hours in the middle of the night. The disparity between the food allowed. The fact that African Americans were allowed to have private... Not only were they allowed to choose their cells, they were allowed to have private cells. And Mr. Rudibus actually discusses a time when he was moved out of his cell because an African American inmate wanted his cell, essentially. And, therefore, those facts are sufficient for which a conclusion could be drawn that relief could be granted upon. But, again, that's the standard at the 12B6 stage. His complaint with regard to his claim that he was moved to another cell and couldn't see the TV. Is there any other consequence of the... What other consequence of the move in cells does he allege caused him harm? Your Honor, the fact that he was, again, moved from the cells when he was, again, this prompted a move to protective custody where there was treated differently in the protective custody. But in what regard? He mentioned, yeah, and he mentions in his complaint, he doesn't... He talks about the harsher conditions. He wasn't allowed to go to church. He wasn't allowed to use the phone and the computer as well. He was in protective custody. Therefore, that was the prompted, or the disparate impact, or, excuse me, disparate treatment essentially prompted that move. Those were the harsher, what he would view as the harsher conditions as a result. Yes, Your Honor. Therefore, based on Mr. Rudibus, the sufficiency of the facts pleaded in Mr. Rudibus' complaint coupled with his pro se status and Twombly's mandate, that all facts should be concluded as true in the pleading stage, appellant... When was he moved to protective custody? I'm trying to find that. Yes, Your Honor. I believe, I'm not sure of the exact date, but he was only in the protective custody for three months. So it wasn't necessarily the whole time he was at the ADC. It was, I believe it's listed on page 13 or 14 of the joint appendix, but I will look for it and let you know when I come back up for my rebuttal. Before you leave, can I hear you briefly on what I interpret to be a procedural due process claim? Yes, Your Honor. The due process claim essentially states that Mr. Rudibus was denied a liberty interest based on the Alexandria Detention Center handbook, which laid out the process and procedure for which an inmate is moved to the protective custody. He also denies, or he also notes the denial was an atypical and significant hardship in relation to ordinary prison life. As I mentioned, the lack of availability of the communication computer at church. But he was already in administrative segregation, wasn't he? Yes, Your Honor, but the protective custody was different than the administrative segregation. It was harsher in the protective custody. To the extent that he couldn't have some of those social contacts. Yes, Your Honor, and the ability to contact or work on his claims. He stated he had been denied access to working on his filings for this case. And then finally, the last allegation is the state prison employed a constitutionally inadequate process for moving him by not adhering to their handbook. Therefore, for these reasons, appellant respectfully requests that this court reverse. Thank you. All right. Mr. Frank Cuzanko. Good morning, Your Honor. You'll have to give me the pronunciation. Yes, Your Honor. May it please the Court, it's Frank Cuzanko. Frank Cuzanko. Yes, sir. Again, may it please the Court. Good morning, Your Honors. My name is Alex Frank Cuzanko, and I represent the appellees in this case. This is a case where Judge Alan Wright granted the defendant's motion to dismiss and dismiss Mr. Raudebusch's complaint in its entirety. In her dismissal order slash opinion, which was approximately nine pages long, she addresses the issues of pro se litigants and acknowledged that they are to be liberally construed. She also addresses the Iqbal Tuamli Doctrine, which is that case is exactly why important for cases like this. If you also review in the appendix on page 78, Judge Alan Wright notes that Mr. Raudebusch has filed over 100 cases. So I think the argument that he was denied access to courts or ability to pursue legal . . . Well, I think, if you will, to at least the claim that concerns me quite a bit, and that is one on the recreational time, which on page 20 of the joint appendix, he makes this written allegation that Ms. Graham has assigned white inmates and Hispanic inmates to a recreational break of two to three, but she makes a schedule and places black inmates on a different time with their friends and that no inmates get this treatment except for black inmates. That seems to be at least a prima facie case of equal protection at that point, at least that it's similar to our case of day, similar to the Clements case, in which we felt similarly that where black inmates were ordered, the scientists may perform degrading tests. We found equal protection in that case. Why is that not at least a case of sufficient established equal protection? And if so, did the trial court apply the correct standard? Your Honor, I think the trial court looked at the complaint in its entirety. The allegation that somebody is getting . . . I want to deal with that section right there. And I'm going to . . . I know you look at the whole complaint. I agree. If you just wash it into the whole complaint, but he makes five claims. Yes. And that's one claim. Let's break that . . . Dealing with the recreational time, the differential in the treatment. He's saying white and Hispanics are not allowed to go at a certain time, only blacks can go during this particular time, and that no other ones are doing it. Let's break down that complaint. Two, his allegation is that Caucasians and Hispanics get rec time at 2 and 3 a.m. in the morning. Let's look at that allegation. That would be like me telling you right now that it's nighttime outside. What jail or prison? And I think . . . How do we view it under 12B6? Well, I understand that, but . . . What do you understand? So I make sure I understand. I mean, an allegation that is completely . . . No, what do you understand? How do we view that? Well, you have to view it in the light most favorable to the plaintiff. And what is he saying? He's saying that they get a recreational break between 2 and 3 and 4 a.m. I understand it sounds plausible, but he makes an allegation. I think the court determined that that was not plausible. I think that the court can look at allegations and determine whether or not they're plausible. That's the next step. You've got the complaint, and either you answer and bring some evidence, and then you do it on summary judgment. But if you can go on a complaint, you've got what the complaint says, and we take it in the light most favorable. Yes, Your Honor. But if we're going to weigh and say, well, that doesn't sound reasonable. I didn't say reasonable. I said plausible. Plausible. But the allegation is taken. The plausibility of it comes once we look at what he's alleged. Then we say, is it a plausible one? I don't know if we get into the weeds of, well, do they do this at 2 or 3 and 4? I don't know when they do it, to be honest. It does sound like it wouldn't be reasonable. But is that the basis? No, Your Honor. Again, I think if you just take that allegation alone, if you say, okay, African-Americans get this privilege while the Caucasians don't, that is disparate treatment. But I also think – When we get there, now we're sliding into what is the review, which may be the issue in this case, and that is, is it a rational basis review or is it a strict scrutiny review? Well, what the court did hold on page – Did you understand? I thought that was a pretty point. Right. Is it rational basis or is it strict scrutiny or some other level review? Some other. And that's what I was getting at. What the court articulated is that in a prison context, the court must determine whether or not the disparate treatment is reasonably related to a legitimate – What court are you talking about? I'm sorry? You said the court said this. What court? The holding court in this case. This court? Yes, on page 79 of the joint appendix. I'm reading from Judge Allen Wright's decision. And what she wrote in her opinion was that in a prison context, therefore the court must determine whether the disparate treatment is reasonably related to any legitimate peniological interest. That sounds like a rational basis. Yes, it does. Is that true? I mean, is that not the Johnson case? I don't want the United States Supreme Court. The court quotes the Shaw v. Murphy as a basis for that. And we argued that the Johnson case was a plurality that the Shaws should still be owning. Plurality. You think Justice Ginsburg concurrence, you think she said something other than strict scrutiny? She went further. Right, she did. You can't be serious. Are you? I mean, that it was a plurality. It was definitely, they said strict scrutiny. It said strict. Judge? What's the plurality? Your Honor, I would say that for the equal protection claim, it's going to be strict scrutiny, if that's what the court is asking. Yes. There's nothing plurality about that. That's clear. And that's the only thing I ask you if you apply Johnson here. Right. If you get there. If you get there. And then, at least it seems to me, the trial court at least put the wrong standard here. And it may have, Your Honor. In terms of the... You say may? In terms of its interpretation of this particular issue, yes. Thank you. But I don't think you get to that point because I think, as Judge Niemeyer was mentioning earlier, they weren't similarly situated. And I think that once you're in protective custody, that you're not entitled to the same rights, even as the folks in... Who's not similarly situated insofar as this recreational time? Mr. Radebush versus anybody else. He's... Because he... White inmates and Hispanic inmates get a break between 2, 3, and 4 a.m. But there's a schedule that's made for black inmates at a different time to go with their friends, and no other inmates get that amenity except black inmates. But what he's alleging in his complaint is that he is in protective custody when he is not getting these privileges, if you will. He's throwing a blanket. He's saying white inmates and Hispanic inmates aren't getting it. He says he's white, and he's not getting it because he's white. But he's not saying that the African-Americans are also in protective custody, getting those same privileges. He's saying the black inmates at times are getting this same, this different treatment here. Right. But he's not saying that they're similarly situated. Because you can be in general population. You could be in admin, say. The difference has not to do with race, but because he was in protective custody as opposed to that. And that's based on his own allegations. He's alleging that he's in a privilege. Not on JA-20. JA-20, he just got that paragraph up there that just says this. He doesn't say anything about whites who are in protective custody or not. He's just saying white and Hispanic can only go, and he used this 2 a.m., 3 a.m., 4 a.m. I don't know if he meant p.m. I don't know what he meant by it. He probably did. But get away from the time. He's saying that. And he's not talking about I'm in protective custody. Because he, I mean, no, that wouldn't be rational. If he's in protective custody, he's going to get the same time as someone who's not. But he's saying that in his complaint. I mean, you can't, how can you separate, I don't understand the court, how you can separate the fact that he's saying part of the reason is that he's in protective custody. And he's arguing, as the court had mentioned earlier, that because he is. He's got a blanket of allegations in here. Is he always in protective custody? Well, it's hard to tell from the pro se complaint exactly when he went into protective custody. But he's saying that one of the reasons. But that's your argument. They're not similarly situated. You've got to read in that he's talking about protective custody here. That in a light most favorable of him, we've got to read in here that he's in protective custody? Well, he's not saying that the African Americans are in the same custody level that he is when they're getting these privileges and he's not. And he's saying in the complaint that he's in protective custody. So I think he does have to affirmatively assert or at least allege in the complaint that they're similarly situated for equal protection to kick in. That's his obligation. And even as a pro se, you have to put that out there. He's really not making this specific to himself. He's really saying she does this. She assigns white inmates and Hispanic inmates to a recreational break. And he says 2 a.m., 3 a.m., 4 a.m. That makes the schedule that's different from black inmates. And he says no inmates get this amenity except black inmates. That sounds pretty close to the day case, which is a case out of this court. And you know the facts of that. In Klamath, it looks like Pendleton case where we sustained those kind of recognition of equal protection. Sometimes you get these cases and I know it sounds technical when we get up here. And the bottom line is it seems like this case is not going to go anywhere even if we send it back. So sometimes these things are premature. And you look at it, and I know it's difficult. You're reading a handwritten pro se complaint. And for the court to just pull out a paragraph, it seems like, but that paragraph is really a pretty powerful paragraph. It says it was here. And I think that's the problem that we have. I don't think you can just pull out a paragraph. I think you have to look at the allegations in their entirety. I mean, in one case he's saying that he's treated this way because he's Caucasian and homosexual. But then later in the complaint he's saying, well, they're threatening me because I'm Caucasian and I'm homosexual. So in that, by saying that, by saying that he's receiving threats, then the court can totally take a reasonable inference that they have a peniological interest in putting him in protective custody. Otherwise, we have a case that we had before we just got up where an inmate gets assaulted and you may have some knowledge of potential threats against him. And now you have a different case before the court, whether or not they intentionally heeded those threats or not. So, Your Honor, I think that by just taking that one provision, yes, you could say, well, that clearly is desperate treatment. And what peniological interest would you have to give an African American a rec time from noon to 6 and make whites and Hispanics only get up at 3 or 4 in the morning for their rec time? Totally. Let me just leave it at this. If it's one provision, I understand, you don't want to pull just one. But if it's a separate claim, which complaints do all the time, a properly drafted complaint can have separate claims in there. Yes, Your Honor. That's what this looks like. He's standing alone. He's made this separate. It doesn't have the recreational time. It's separate from all these other cell block movable and all this other stuff. This is a separate thing. He's saying this is what she does. And she's doing it in a discriminatory way, which looks to me just like the day case. And if it becomes that, then the issue comes to us. Do we apply strict scrutiny or do we apply this rational basis test, which the trial just did? And if the allegation is that they're similarly situated? Because I think you have to affirmatively plead that, Your Honor, that they were similarly situated at that time that the rec distinguishing rec time was given. And I don't think that is a plead in this complaint. He does say at the end he dates it October 4, 2013. And most of the events he describes in here are in October, usually a lot of them on October 3 and so forth. But he alleges that as of October 4, he says he has been in protective custody for three months, over three months. And so that if you go back, that would include September, August, and July. And none of the events, I don't think, are before that. And I think in deference to the trial court, I think, again, the trial judge, she reviewed the entirety of the complaint in making her opinion and didn't If he's in protective custody, and it's assumed he won't be there forever, what if this is true, what he's saying, that they are, that she is doing this, that she's doing this anyway, and he sees this, and he's in a racist way, and it is true that she's allowing racists to go at different times in the manner here. Does the protective custody, the fact that he's in protective, keep him from making that claim? Your Honor, I would argue that unless that directly impacted him, that that was the reason that he was not getting rec time, that he may not have standing to bring that claim. Really? So he could be in solitary confinement for six months, but if he knows this is happening, it has already happened, he can't make that allegation until he gets out of solitary confinement. When it directly impacts him, then he has standing to bring that claim. Okay. I mean, if I see somebody get assaulted, do I have a claim against the person that assaulted? It is recognized he's a prisoner, just like the rest of them. They're all similarly situated as prisoners. He's just being put in a different status as a prisoner there. You're saying that different status takes away the right for him to assert an equal protection claim that's happening to all prisoners. Well, if it was happening to him, regardless of his status because of race, then yes, I agree. If the race was the bottom line rationale for him not getting a certain privilege regardless of status, but if it's because of his status and not race, then he would not have a claim. And that goes back to what I'm saying. He's never alleged in his complaint that he's similarly situated to those other prisoners. And, in fact, he goes out of his way to assert that he's in protective custody and further argues that that's another way that he's being racially discriminated, while at the same time arguing that he's being threatened because of his race and sexual preference. So, I mean, he's asking for, you know, have it both ways. But I think, in fairness to the trial court, that Judge Allen Wright did review the entirety of the complaint. And, you know, again, she identified in her opinion that Mr. Radebush has had ample opportunities to litigate issues, not only in this jail, but a lot of jails between, as she identified, between Florida, New Jersey and Florida. He's currently a federal prisoner and now at a federal institution. But, Your Honors, if I could, we've been focusing on equal protection, but I think the civil conspiracy claim and the due process claims were also correctly ruled upon by the trial judge. I would ask that the court affirm on the court's decision on those two issues as well. You could tell from the complaint that the plaintiff was simply throwing out random counts and random claims and asserting various aspects of the Constitution, even I think you referred to the United Nations treaty with regard to some of his claims. And the court didn't just summarily dismiss it. The court did take the time, authored a nine-page opinion, and giving reasons why she issued her decision. And I think that this court has sufficient basis to affirm the trial court's decision. All right. Thank you, Mr. Allen. Thank you. Thank you, Your Honors. Ms. Mellon. May it please the Court. First of all, I just wanted to clarify two issues on rebuttal. First, to clarify the timeline of Mr. Rudabush's move to protective custody, on page three of Appellant's reply brief, we discuss where Mr. Rudabush alleged that he had been complaining about these racially discriminatory conditions since April of 2013 when he was placed at the ADC. It was a full six months before he filed this complaint. So would he lose standing if you put him in protective custody? No, Your Honor, he would not lose standing because he still was able to witness the goings-ons at the Alexandria Detention Center. Moreover, he did state where he was injured by having his cell being moved because of an African-American inmate who wanted his cell. Moreover, he alleges on pages 13 and 14, I believe, about the trustee system at the Alexandria Detention Center, whereas essentially inmate bosses were chosen to be at leadership positions. All but one of those individuals chosen for that position were African-American. Therefore, Mr. Rudabush was not chosen for that position as well because of his race. Moreover, again, the time... How does that follow? Because... The fact that you have a cell population that has a lot of African-Americans and the trustees happen to be African-Americans, why is that discrimination that he wasn't picked? It follows that because all of the, all except for one of the trustees... It just doesn't follow. I mean, it's too general to say because an African-American was picked to be a trustee, he was discriminated against. Yes, Your Honor. It's the fact, again, because it was just the one as opposed to any other African-Americans that were chosen as the trustee. But again, the timeline states that Mr. Rudabush was in the admin seg with the similarly situated inmates for at least three months before he was moved to protective custody. Moreover, I'd like to remind the court that the reason he was moved to protective custody was because of the complaints he was making about the racially discriminatory treatment that he was... Yeah, but see, the complaints he's talking about, most of them are, I see, September 22, 25. Most of them are September 22, 25. There's another one, September 26. He says he's been complained since April, but the events he talks about, and then he talks about October 3. A lot happened on October 3, apparently. He states several things on October 3, and then he files his complaint. September 4 is another event, and his complaint is filed on October 4, I guess. Or written on October 4. Yeah, it was filed on October 4, yes. Yes, but the fact that he was in the admin seg with the other similarly situated inmates provides ample support for the inference that not only does he have knowledge, but that he was affected. The fact that Caucasian and Hispanic inmates were only allowed outside during the times of 2 a.m. and 4 a.m., and the fact that Mr. Rudabush is Caucasian, that warrants the inference that he was part of that group that was not allowed outside any other time of the day besides 2 a.m. and 4 a.m. Did he mean 2 a.m. or 4 a.m.? Your Honor, that's something for discovery to determine whether that, the 2 a.m. or 4 a.m. if he meant 2 p.m. or 2, excuse me, 4 p.m. However, the standard required by Iqbal Twombly and 12b-6 is simply plausible, not probable, and he reaches that by stating these facts, again, not being denied at all by opposing counsel in either their brief or in argument. Therefore, the fact that there's even this one claim that's plausible, this case should move forward to the discovery phase to determine whether this actually happened or what the situation regarding recreation time was. Moreover, regarding your Honor's points about the Johnson v. California opinion, once the plaintiff establishes the prima facie case of discrimination, the disparate treatment, the intentional disparate treatment, it is then subject to strict scrutiny per Johnson v. California. And again, the penological interests that your Honor's noted, that there may be reasons behind the move or the treatment, those penological interests are considered, but they must be narrowly tailored per the Johnson opinion regarding strict scrutiny and just the requirements of strict scrutiny that the government compelling interests must be narrowly tailored. Therefore, again, that would survive past the strict scrutiny because there are alternatives that could have taken place in order to allow. Your Honor, I see my time is up. May I briefly conclude? Yeah. So for those reasons stated on brief and oral argument, the district court reversed the district court's grant of defendant's motion to dismiss and remand. Thank you. All right. Thank you. I want to recognize the program at the law school, how effective the program is, and I want to congratulate the two of you for your work on this case and thank you for the service to the court. That's ultimately the issue. We look forward to seeing you here when you get out of law school again and now you're all familiar with it and how it is. We'll come down and shake your hand and proceed on the last case. Thank you.
judges: Paul V. Niemeyer, William B. Traxler, Jr., James A. Wynn, Jr.